## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ERIC JANSON, CAMERON JACKLIN, and JOHN SPRAY,** Individually and on behalf of all others similarly situated, | **Case No.** _____ |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| v. | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **SAC WIRELESS, LLC,** | |
| **Defendant.** | **CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiffs—Eric Janson, Cameron Jacklin, and John Spray—bring this action individually and on behalf of all current and former hourly Tower Technicians (collectively, "Plaintiffs and the Putative Collective/Class Members"), who worked for Defendant—SAC Wireless, LLC ("SAC")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Colorado Wage Claim Act, C.R.S. §§ 8-4-101–127 ("CWCA"); the Colorado Wage Rules and Regulations, 7 Colo. Code Regs. § 1103-1.1–1.8 ("CWRR") (the CWCA and CWRR are collectively referred to as the "Colorado Acts"); the Illinois Minimum Wage Law, 820 ILCS 105/1–105/15 ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1–115/15 ("IWPCA") (the IMWL and IWPCA are collectively referred to as the "Illinois Acts"); the New Jersey Wage and Hour Law, as amended by the New Jersey Wage Theft Act, N.J.S.A. 34:11-34–34:11-56a41 ("NJWHL"); the New York Payment of Wages Act, N.Y. LAB. LAW § 190–199

("NYPWA"); and the New York Minimum Wage Act, N.Y. LAB. LAW § 651–665 ("NYMWA") (the NYPWA and NYMWA are collectively referred to as the "New York Acts").

## I.
## OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and class actions pursuant to the state laws of Colorado, Illinois, New Jersey, and New York under FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2.      Plaintiffs and the Putative Collective/Class Members are those similarly situated persons who worked for SAC at any time during the relevant time periods through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3.      Although Plaintiffs and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      Likewise, Plaintiffs and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.      During the relevant time period(s), SAC knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.      Specifically, SAC's regular practice—including during weeks when Plaintiffs and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked

"off-the-clock")—was (and is) to deduct a 30-minute meal-period each eight (8) hour shift from the Plaintiffs' and the Putative Collective/Class Members' wages for a meal break they did not receive.

7.     In addition, SAC paid the Plaintiffs and Putative Collective/Class Members non-discretionary bonuses, but failed to include the bonuses in the Plaintiffs' and Putative Collective/Class Members' regular rate of pay, for purposes of calculating their correct rate of overtime compensation.

8.     The effect of SAC's practices was (and is) that all compensable time worked by Plaintiffs and the Putative Collective/Class Members was not (and is not) counted and paid; thus, SAC has failed to properly compensate Plaintiffs and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

9.     SAC knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked and the proper amount of overtime at the proper rate on a routine and regular basis during the relevant time period(s).

10.    Plaintiffs and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

11.    Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time and other damages owed under the state laws of Colorado, Illinois, New Jersey, and New York as a class action pursuant to FED. R. CIV. P. 23.

12.    Plaintiffs also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

13.     Plaintiffs also pray that the Rule 23 classes are certified as defined herein, with the Plaintiffs designated herein named as the Class Representatives.

## II.
## THE PARTIES

14.     Plaintiff—Eric Janson ("Janson")—was employed by SAC in New Jersey and New York, during the relevant time period(s). Plaintiff Janson did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

15.     Plaintiff—Cameron Jacklin ("Jacklin")—was employed by SAC in Colorado during the relevant time period(s). Plaintiff Jacklin did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

16.     Plaintiff—John Spray ("Spray")—was employed by SAC in Illinois during the relevant time period(s). Plaintiff Spray did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

17.     The FLSA Collective Members are those current and former hourly Tower Technicians[4] who were employed by SAC at any time from April 3, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

---

[1] The written consent of Eric Janson is attached hereto as Exhibit "A."

[2] The written consent of Cameron Jacklin is attached hereto as Exhibit "B."

[3] The written consent of John Spray is attached hereto as Exhibit "C."

[4] Tower Technicians are employees who build, upgrade, disassemble, and/or repair telecommunication towers, which employees have job titles including but not limited to Tower Technician I, Tower Technician II, Tower Technician III, Top Hand, Tower Lead, and Foreman.

18.     The Colorado Class Members are those current and former hourly Tower Technicians who were employed by SAC in the State of Colorado at any time from April 3, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Jacklin worked and was paid.

19.     The IWPCA Class Members are those current and former hourly Tower Technicians who were employed by SAC in the State of Illinois at any time from April 3, 2014, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Spray worked and was paid.

20.     The IMWL Class Members are those current and former hourly Tower Technicians who were employed by SAC in the State of Illinois at any time from April 3, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Spray worked and was paid.

21.     The New Jersey Class Members are those current and former hourly Tower Technicians who were employed by SAC in the State of New Jersey at any time from April 3, 2018, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Janson worked and was paid.

22.     The New York Class Members are those current and former hourly Tower Technicians who were employed by SAC in the State of New York at any time from April 3, 2018, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Janson worked and was paid.

23.     Defendant SAC Wireless, LLC is a foreign limited liability company, that is headquartered in, and licensed to do business in, the State of Illinois and may be served through its registered agent for service of process: **Illinois Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, Illinois 62703-4261**.

## III.
## JURISDICTION & VENUE

24.     This Court has federal question jurisdiction over Plaintiffs' claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

25.     This Court has supplemental jurisdiction over Plaintiffs' additional state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy.

26.     Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

27.     This Court has general personal jurisdiction over SAC because Illinois qualifies as its home state.

28.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Northern District of Illinois because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

29.     Additionally, SAC's corporate headquarters are in Elgin, Illinois, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

30.     Defendant SAC is a subsidiary of Nokia Company and provides general contracting and infrastructure construction services for the wireless industry.[5]

31.     Specifically, SAC builds, repairs, and upgrades telecommunications towers throughout the United States.

---

[5] https://sacw.com/about-us

32.     To provide its services, SAC employed (and continues to employ) numerous hourly Tower Technicians—including Plaintiffs and the individuals that make up the putative collectives and classes.

33.     Plaintiffs and the Putative Collective/Class Members were employed by SAC as non-exempt Tower Technicians who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

34.     Plaintiffs' and the Putative Collective/Class Members' job duties include building telecommunications towers, repairing telecommunications towers, and upgrading the hardware on telecommunications towers.

35.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work.

36.     Importantly, none of the FLSA exemptions relieving a covered employer (such as SAC) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiffs or the Putative Collective/Class Members.

37.     Plaintiff Janson was employed by SAC as a Tower Lead throughout the states of New Jersey and New York from approximately 2017 until December of 2023.

38.     Plaintiff Jacklin was employed by SAC as a Tower Technician throughout the State of Colorado since approximately June of 2022.

39.     Plaintiff Spray was employed by SAC as a Foreman throughout the State of Illinois from approximately April of 2019 until April of 2022.

40.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of SAC resulting in the complained of FLSA and state law violations.

41.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties.

42.     Plaintiffs and the Putative Collective/Class Members are non-exempt employees who were (and are) paid by the hour.

43.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to the policies (and practices) of SAC resulting in the complaint of FLSA and state law violations.

**Unpaid Meal Breaks**

44.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and had a meal break automatically deducted from their daily time.

45.     Plaintiffs and the Putative Collective/Class Members were typically scheduled to work 12-hour shifts each day for five (5) to six (6) days per workweek, which equates to sixty (60) to seventy-two (72) hours per workweek—these are referred to as "on-the-clock" hours.

46.     In addition to their "on-the-clock" hours, Plaintiffs and the Putative Collective/Class Members regularly worked between two-and one-half to three hours "off-the-clock" per workweek and have not been compensated for that time.

47.     SAC has a policy to automatically deduct one 30-minute meal period from Plaintiffs' and the Putative Collective/Class Members' daily time regardless whether they perform compensable work during such "breaks."

48.     Despite automatically deducting thirty (30) minutes from each Plaintiff and the Putative Collective/Class Members' time each shift, Plaintiffs and the Putative Collective/Class Members did not receive or take a thirty (30) minute meal break.

49. Indeed, SAC did not even inform the Plaintiffs or Putative Collective/Class Members that it was automatically deducting thirty (30) minutes from their compensable time each shift for a meal break.

50. SAC never formally told Plaintiffs and the Putative Collective/Class Members that it was deducting thirty (30) minutes from their wages each shift, never told them they needed to take meal breaks, and never told them to notify anyone if they did not take a meal break.

51. Plaintiffs and the Putative Collective/Class Members typically spent the vast majority of their workday suspended 200 feet off the ground working on telecommunications towers where taking a meal break was logistically unfeasible.

52. During the Plaintiffs' employment, SAC changed its procedure and instead of automatically deducting the meal break itself, required Plaintiffs and the Putative Collective/Class Members to always deduct the meal break from their recorded hours worked.

53. Plaintiffs and the Putative Collective/Class Members were informed they were required by SAC to enter in a meal break into their time records even if they had not actually received a meal break.

54. Specifically, Plaintiffs and the Putative Collective/Class Members were told their time would not be approved and paid unless a meal break was entered into their payroll records each day.

55. In essence, SAC continued its automatic deduction policy by requiring Plaintiffs and the Putative Collective/Class Members to deduct the time themselves, regardless of whether or not they received a meal break.

56. SAC was (and continues to be) aware that Plaintiffs and the Putative Collective/Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and relevant state law.

57.     SAC benefitted from the Plaintiffs' and the Putative Collective/Class Members' free labor, as Plaintiffs and the Putative Collective/Class Members typically worked throughout their entire shift without taking a break.

58.     SAC knew Plaintiffs and the Putative Collective/Class Members did not take breaks because SAC supervisors observed Plaintiffs and the Putative Collective/Class Members work throughout their entire shift without taking a break.

59.     SAC also knew the Plaintiffs and the Putative Collective/Class Members did not take breaks because Plaintiffs and the Putative Collective/Class Members complained to SAC that they did not take meal breaks and should have been paid for their time.

60.     Indeed, whenever Plaintiffs and the Putative Collective/Class Members turned in time records which did not indicate a meal break was taken, SAC managers would either reject the time records and mandate that the Plaintiffs and Putative Collective/Class Members enter a meal break time so that their time records could be approved, or the managers would record a fake meal break for the Plaintiff or Putative Collective/Class Member.

61.     SAC's thirty (30) minute meal period deduction resulted (and continues to result) in Plaintiffs and the Putative Collective/Class Members working straight time hours and overtime hours for which they were (and are) not compensated at the rates required by the FLSA and applicable state law.

62.     Specifically, when Plaintiffs and Putative Collective/Class Members worked three (3) or fewer twelve-hour shifts in a workweek and did not receive a meal break during any shift, SAC's meal break policy resulted in Plaintiffs and the Putative Collective/Class Members not being paid for roughly one and one-half hours of compensable straight time work.

63.     When Plaintiffs and the Putative Collective/Class Members worked four (4) or more twelve-hour shifts in a week and did not receive a meal break during any shift, SAC's meal break policy

resulted in Plaintiffs and the Putative Collective/Class Members not being paid for roughly two hours of compensable overtime work.

64.     As a result of SAC's failure to compensate Plaintiffs and the Putative Collective/Class Members for compensable work performed "off the clock," such as during their unpaid meal break, Plaintiffs and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

**SAC Failed to Include Non-Discretionary Bonuses in the Regular Rate**

65.     SAC paid out non-discretionary bonuses based on production but failed to include these bonuses in the Plaintiffs' and Putative Collective/Class Members' regular rates of pay.

66.     The non-discretionary bonuses paid to Plaintiffs and the Putative Collective/Class Members were meant to encourage and motivate them to work harder and to reward them for their hard work.

67.     The non-discretionary bonuses were based upon a pre-determined formula established by SAC.

68.     Moreover, specific criteria had to be met in order to receive these non-discretionary bonuses.

69.     When Plaintiffs and the Putative Collective/Class Members met the criteria, they were entitled to receive these non-discretionary bonuses.

70.     Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiffs' and the Putative Collective/Class Member's regular rates of pay before any and all overtime multipliers were applied.

71.     SAC's failure to compensate Plaintiffs and the Putative Collective/Class Members overtime compensation at a rate of one and one-half times their regular rates of pay violated (and continues to violate) the FLSA and applicable state law.

72.     SAC knew or should have known that it was not (and is not) compensating Plaintiffs and the Putative Collective/Class Members for the proper amount of overtime compensation at the proper rate in violation of the FLSA.

73.     SAC knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiffs and Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Plaintiffs and the Putative Collective/Class Members.

74.     SAC knew or should have known that not compensating the Plaintiffs and the Putative Collective/Class Members for all overtime hours worked at the correct rate did cause and continues to cause financial injury to Plaintiffs and the Putative Collective/Class Members.

75.     Because SAC did not pay Plaintiffs and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, SAC's pay policies and practices willfully violated (and continue to violate) the FLSA and applicable state laws.

76.     Because SAC did not pay Plaintiffs and the Putative Collective/Class Members for all straight time worked, SAC's pay policies and practices violated (and continue to violate) applicable state laws.

77.     Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time pursuant to applicable state law.

**V.**
**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

78.     The preceding paragraphs are incorporated as though fully set forth herein.

79.     The FLSA Collective is defined as follows:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY SAC WIRELESS, LLC, AT ANY TIME FROM APRIL 3, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

80.     At all material times, SAC has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

81.     At all material times, SAC has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

82.     At all material times, SAC has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of telecommunications infrastructure and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

83.     Specifically, SAC employs numerous Tower Technicians to provide services in the telecommunications industry across the United States, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

84.     During the respective periods of Plaintiffs' and the FLSA Collective Members' employment by SAC, these individuals provided services for SAC that involved interstate commerce for purposes of the FLSA.

85. In performing work for SAC, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

86. Specifically, Plaintiffs and the FLSA Collective Members are (or were) hourly employees who assisted SAC's customers and employees throughout the United States. 29 U.S.C. § 203(j).

87. At all material times, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

88. The proposed classes of similarly situated employees—that is, the FLSA Collectives sought to be certified pursuant to 29 U.S.C. § 216(b), are defined in Paragraph 79.

89. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of SAC.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

90. SAC violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of telecommunications infrastructure, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per workweek at rates of at least one and one-half times the regular rates for which they were employed.

91. Moreover, SAC knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each workweek. 29 U.S.C. § 255(a).

92. SAC knew or should have known its pay practices were in violation of the FLSA.

93. SAC is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

94. Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted SAC to pay them according to the law.

95. The decision and practice by SAC to not pay Plaintiffs and the FLSA Collective Members overtime compensation for all hours worked over forty (40) each workweek was willful and was neither reasonable nor in good faith.

96. Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

97. All previous paragraphs are incorporated as though fully set forth herein.

98. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action collectively on behalf of SAC's employees who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

99. Other similarly situated employees of SAC have been victimized by SAC's patterns, practices, and policies, which are in willful violation of the FLSA.

100. The FLSA Collectives are defined in Paragraph 79.

101. SAC's failure to pay Plaintiffs and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of SAC, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

102.     Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

103.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

104.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each workweek.

105.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

106.     Absent a collective action, many members of the proposed FLSA Collectives will not likely obtain redress of their injuries and SAC will retain the proceeds of their violations.

107.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

108.     Accordingly, notice of the action should be promptly sent to the FLSA Collective of similarly situated Plaintiffs as in Paragraph 79.

### SECOND CAUSE OF ACTION
**(Class Action Alleging Violations of the Colorado Acts)**

**A.     COLORADO ACTS COVERAGE**

109.     All previous paragraphs are incorporated as though fully set forth herein.

110.     The Colorado Class is defined as:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY SAC WIRELESS, LLC, IN THE STATE OF COLORADO, AT ANY TIME FROM APRIL 3, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Colorado Class Members").**

111.	At all material times, SAC has been an "employer" as defined by the Colorado Acts. C.R.S. § 8-4-101(6).

112.	At all material times, Plaintiff Jacklin and the Colorado Class Members were SAC's "employees" as defined within the Colorado Acts. C.R.S. § 8-4-101(5).

113.	SAC—the "employer"—is not exempt from paying wages and overtime benefits under the Colorado Acts.

**B.	FAILURE TO PAY WAGES IN ACCORDANCE WITH THE COLORADO ACTS**

114.	All previous paragraphs are incorporated as though fully set forth herein.

115.	SAC owes Plaintiff Jacklin and the Colorado Class Members "wages," as defined in the Colorado Acts, to compensate them for labor rendered to SAC. *See* C.R.S. § 8-4-101(14).

116.	The Colorado Acts requires employers, like SAC, to pay every employee all wages and overtime accruing to the employee no later than ten (10) days after their regular pay day. *See* C.R.S. § 8-4-103.

117.	The Colorado Acts also require employers, like SAC, to pay employees overtime for hours worked in excess of twelve (12) hours in a single workday. *See* 7 Colo. Code Regs. § 1103-1:4.

118.	In violation of the Colorado Acts, SAC willfully failed to pay Plaintiff Jacklin and the Colorado Class Members all compensation for "wages" due and owing to them within the time frame required under the Colorado Acts.

119.	Specifically, SAC failed to pay Plaintiff Jacklin and the Colorado Class Members straight time and overtime wages for work performed during underpaid meal breaks and failed to pay overtime wages at a rate of time and one half after Plaintiff Jacklin and the Colorado Class Members worked for more than twelve (12) hours in a day.

120.	In violating the Colorado Acts, SAC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Colorado law.

121. As a direct and proximate result of SAC's willful conduct, Plaintiff Jacklin and the Colorado Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including treble damages, compensatory damages, and reasonable attorneys' fees pursuant to the Colorado Acts. *See* COLO. REV. STAT. ANN. § 8-4-109(3)(B); § 8-4-110.

122. SAC is in possession and control of necessary documents and information from which Plaintiff Jacklin would be able to precisely calculate damages.

123. The proposed class of putative class members sought to be certified pursuant to the Colorado Acts is defined in Paragraph 110.

124. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of SAC.

## C. COLORADO CLASS ALLEGATIONS

125. Plaintiff Jacklin and the Colorado Class Members bring their Colorado Acts claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by SAC to work in Colorado since April 3, 2021.

126. Class action treatment of Plaintiff Jacklin's and the Colorado Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

127. The number of Colorado Class Members is so numerous that joinder of all class members is impracticable.

128. Plaintiff Jacklin's Colorado state-law claims share common questions of law and fact with the claims of the Colorado Class Members.

129. Plaintiff Jacklin is a member of the Colorado Class, his claims are typical of the claims of other Colorado Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Colorado Class Members.

130.     Plaintiff Jacklin and his counsel will fairly and adequately represent the Colorado Class Members and their interests.

131.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the Colorado Class should be certified as defined in Paragraph 110.

<u>**THIRD CAUSE OF ACTION**</u>
**(Class Action Alleging Violations of the IMWL)**

**A.     IMWL COVERAGE**

132.     All previous paragraphs are incorporated as though fully set forth herein.

133.     The IMWL Class is defined as:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY SAC WIRELESS, LLC, IN THE STATE OF ILLINOIS, AT ANY TIME FROM APRIL 3, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("IMWL Class Members").**

134.     At all material times, SAC has been an "employer" as defined by the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3(c).

135.     At all material times, Plaintiff Spray and the IMWL Class Members were SAC's "employees" as defined within the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3(d).

136.     SAC—the "employer"—is not exempt from paying wages and overtime benefits under the IMWL.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE IMWL**

137.     All previous paragraphs are incorporated as though fully set forth herein.

138.     The IMWL requires employers, like SAC, to pay employees, including Plaintiff Spray and the IMWL Class Members, overtime wages at a rate not less than 1.5 times their regular rates of

pay—based on all renumeration recovered—for all hours worked after forty (40) hours in a workweek. *See* 820 Ill. Comp. Stat. Ann. 105/4a.

139.     SAC violated, and continues to violate, the IMWL by failing to pay Plaintiff Spray and the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including off-the-clock hours worked by Plaintiff Spray and the IMWL Class Members during their unpaid meal breaks.

140.     In violating the IMWL, SAC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Illinois law.

141.     As a direct and proximate result of SAC's willful conduct, Plaintiff Spray and the IMWL Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including treble damages, monthly statutory damages, and reasonable attorneys' fees pursuant to the IMWL. *See* 820 ILCS 105/12(A).

142.     SAC is in possession and control of necessary documents and information from which Plaintiff Spray would be able to precisely calculate damages.

143.     The proposed class of putative class members sought to be certified pursuant to the IMWL is defined in Paragraph 133.

144.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of SAC.

## C.     IMWL CLASS ALLEGATIONS

145.     Plaintiff Spray and the IMWL Class Members bring their IMWL claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by SAC to work in Illinois since April 3, 2021.

146. Class action treatment of Plaintiff Spray's and the IMWL Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

147. The number of IMWL Class Members is so numerous that joinder of all class members is impracticable.

148. Plaintiff Spray's IMWL state-law claims share common questions of law and fact with the claims of the IMWL Class Members.

149. Plaintiff Spray is a member of the IMWL Class, his claims are typical of the claims of other IMWL Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other IMWL Class Members.

150. Plaintiff Spray and his counsel will fairly and adequately represent the IMWL Class Members and their interests.

151. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the IMWL Class should be certified as defined in Paragraph 133.

<u>FOURTH CAUSE OF ACTION</u>
**(Class Action Alleging Violations of the IWPCA)**

A. **IWPCA COVERAGE**

152. All previous paragraphs are incorporated as though fully set forth herein.

153. The IWPCA Class is defined as:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY SAC WIRELESS, LLC, IN THE STATE OF ILLINOIS, AT ANY TIME FROM APRIL 3, 2014, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("IWPCA Class Members").**

154.     At all material times, SAC has been an "employer" as defined by the IWPCA. *See* 820 Ill. Comp. Stat. Ann. 115/2.

155.     At all material times, Plaintiff Spray and the IWPCA Class Members were SAC's "employees" as defined within the IWPCA. *Id.*

## B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE IWPCA

156.     All previous paragraphs are incorporated as though fully set forth herein.

157.     The IWPCA requires employers, like SAC, to pay employees, including Plaintiff Spray and the IWPCA Class Members, for all hours they work at the rate(s) agreed to by the Parties.

158.     During the course of their employment, SAC agreed to pay Plaintiff Spray and each IWPCA Class Member an hourly rate for all hours they worked up to 40 hours in a workweek.

159.     Plaintiff Spray and each IWPCA Class Member accepted SAC's offer.

160.     But during the course of their employment, SAC failed to pay Plaintiff Spray and the IWPCA Class Members for all the time they worked at the rates SAC agreed to pay them because SAC failed to pay Plaintiff Spray and the IWPCA Class Members for work performed off-the-clock, during their unpaid meal break.

161.     SAC violated and continues to violate the IWPCA by failing to pay Plaintiff Spray and the IWPCA Class Members all wages earned (at the rates SAC agreed to pay them) for all hours of work they performed for SAC's benefit.

162.     In violating the IWPCA, SAC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Illinois law.

163.     As a direct and proximate result of SAC's willful conduct, Plaintiff Spray and the IWPCA Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, monthly statutory damages, and reasonable attorneys' fees pursuant to the IWPCA. *See* 820 ILCS 115/14(A).

164.     SAC is in possession and control of necessary documents and information from which Plaintiff Spray would be able to precisely calculate damages.

165.     The proposed class of putative class members sought to be certified pursuant to the IWPCA is defined in Paragraph 153.

166.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of SAC.

## C.     IWPCA CLASS ALLEGATIONS

167.     Plaintiff Spray and the IWPCA Class Members bring their IWPCA claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by SAC to work in Illinois since April 3, 2014.

168.     Class action treatment of Plaintiff Spray's and the IWPCA Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

169.     The number of IWPCA Class Members is so numerous that joinder of all class members is impracticable.

170.     Plaintiff Spray's IWPCA state-law claims share common questions of law and fact with the claims of the IWPCA Class Members.

171.     Plaintiff Spray is a member of the IWPCA Class, his claims are typical of the claims of other IWPCA Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other IWPCA Class Members.

172.     Plaintiff Spray and his counsel will fairly and adequately represent the IWPCA Class Members and their interests.

173.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

Accordingly, the IWPCA Class should be certified as defined in Paragraph 153.

**FIFTH CAUSE OF ACTION**
**(Class Action Alleging Violations of the NJWHL)**

**A.      NJWHL COVERAGE**

174.      All previous paragraphs are incorporated as though fully set forth herein.

175.      The NJWHL Class is defined as:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY SAC WIRELESS, LLC, IN THE STATE OF NEW JERSEY, AT ANY TIME FROM APRIL 3, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("NJWHL Class Members").**

176.      At all material times, SAC has been an "employer" as defined by the NJWHL. *See* N.J.S.A. 34:11-4.1(a).

177.      At all material times, Plaintiff Janson and the NJWHL Class Members were SAC's "employees" as defined within the NJWHL. *See* N.J.S.A. 34:11-4.1(b).

178.      SAC—the "employer"—is not exempt from paying wages and overtime benefits under the NJWHL.

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NJWHL**

179.      All previous paragraphs are incorporated as though fully set forth herein.

180.      During the course of their employment, SAC agreed to pay Janson and each NJWHL Class Member an hourly rate of pay.

181.      Janson and each NJWHL Class Member accepted SAC's offer.

182.      Janson and the NJWHL Class Members' agreed hourly pay rates are therefore "wages" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-4.1(c).

183.      The NJWHL also requires employers, like SAC, to pay employees, including Plaintiff Janson and the NJWHL Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a workweek. *See* N.J.S.A. 34:11-56a4(b).

184. SAC violated, and continues to violate, the NJWHL by failing to pay Plaintiff Janson and the NJWHL Class Members all straight time hours worked at the agreed hourly rate and all overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including all off-the-clock hours worked by Plaintiff Janson and the NJWHL Class Members during their unpaid meal breaks. *See* N.J.S.A. 34:11-4.2; 34:11-56a4(b).

185. In violating the NJWHL, SAC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New Jersey law.

186. As a direct and proximate result of SAC's willful conduct, Plaintiff Janson and the NJWHL Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including treble damages, and reasonable attorneys' fees pursuant to the NJWHL. *See* N.J.S.A. 34:11-56a25.

187. SAC is in possession and control of necessary documents and information from which Plaintiff Janson would be able to precisely calculate damages.

188. The proposed class of putative class members sought to be certified pursuant to the NJWHL is defined in Paragraph 175.

189. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of SAC.

## C. NJWHL CLASS ALLEGATIONS

190. Plaintiff Janson and the NJWHL Class Members bring their NJWHL claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by SAC to work in New Jersey since April 3, 2018.

191. Class action treatment of Plaintiff Janson's and the NJWHL Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

192. The number of NJWHL Class Members is so numerous that joinder of all class members is impracticable.

193. Plaintiff Janson's NJWHL state-law claims share common questions of law and fact with the claims of the NJWHL Class Members.

194. Plaintiff Janson is a member of the NJWHL Class, his claims are typical of the claims of other NJWHL Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other NJWHL Class Members.

195. Plaintiff Janson and his counsel will fairly and adequately represent the NJWHL Class Members and their interests.

196. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the NJWHL Class should be certified as defined in Paragraph 175.

**SIXTH CAUSE OF ACTION**
**(Class Action Alleging Violations of the New York Acts)**

**A.    NEW YORK ACTS COVERAGE**

197. All previous paragraphs are incorporated as though fully set forth herein.

198. The New York Class is defined as:

**ALL TOWER TECHNICIANS WHO WERE EMPLOYED BY SAC WIRELESS, LLC, IN THE STATE OF NEW YORK, AT ANY TIME FROM APRIL 3, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("New York Class Members").**

199. At all material times, SAC has been an "employer" as defined by the New York Acts. *See* NY LAB. LAW §§ 190(3) and 651(6).

200. At all material times, Plaintiff Janson and the New York Class Members were SAC's "employees" as defined within the New York Acts. *See* NY LAB. LAW §§ 190(2) and 651(5).

201.    SAC—the "employer"—is not exempt from paying wages and overtime benefits under the New York Acts.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NEW YORK ACTS**

202.    All previous paragraphs are incorporated as though fully set forth herein.

203.    During the course of their employment, SAC agreed to pay Janson and each New York Class Member an hourly rate of pay.

204.    Janson and each New York Class Member accepted SAC's offer.

205.    Janson's and the New York Class Members agreed hourly pay rates are therefore "wages" within the meaning of the New York Acts. *See* NY LAB. LAW § 191(1)(d).

206.    The New York Acts also require employers, like SAC, to pay employees, including Plaintiff Janson and the New York Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a workweek. *See* NY LAB. LAW § 191(1)(d).

207.    SAC violated, and continues to violate, the New York Acts by failing to pay Plaintiff Janson and the New York Class Members all straight time hours worked at the agreed hourly rate and all overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including all off-the-clock hours worked by Plaintiff Janson and the New Yok Class Members during their unpaid meal breaks. *See* N.Y. COMP. CODES R. & REGS. TIT. 12, § 142-2.2

208.    In violating the New York Acts, SAC acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

209.    As a direct and proximate result of SAC's willful conduct, Plaintiff Janson and the New York Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including double

damages for unpaid overtime, treble damages for unpaid straight time, and reasonable attorneys' fees pursuant to the New York Acts. *See* NY LAB. LAW § 198; 663(1).

210.     SAC is in possession and control of necessary documents and information from which Plaintiff Janson would be able to precisely calculate damages.

211.     The proposed class of putative class members sought to be certified pursuant to the New York Acts is defined in Paragraph 198.

212.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of SAC.

## C.     NEW YORK CLASS ALLEGATIONS

213.     Plaintiff Janson and the New York Class Members bring their New York Acts claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by SAC to work in New Jersey since April 3, 2018.

214.     Class action treatment of Plaintiff Janson's and the New York Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

215.     The number of New York Class Members is so numerous that joinder of all class members is impracticable.

216.     Plaintiff Janson's New York state-law claims share common questions of law and fact with the claims of the New York Class Members.

217.     Plaintiff Janson is a member of the New York Class, his claims are typical of the claims of other New York Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other New York Class Members.

218.     Plaintiff Janson and his counsel will fairly and adequately represent the New York Class Members and their interests.

219.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the New York Class should be certified as defined in Paragraph 198.

## VI.
## RELIEF SOUGHT

220.     Plaintiffs respectfully pray for judgment against SAC as follows:

a.     For an Order certifying the FLSA Collective as defined in ¶ 79;

b.     For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.     For an Order pursuant to § 216(b) of the FLSA finding SAC liable for unpaid wages, including unpaid overtime wages, due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

d.     For an Order certifying the Colorado Class as defined in ¶ 110, and designating Plaintiff Jacklin as Representative of the Colorado Class;

e.     For an Order pursuant to the Colorado state law awarding Plaintiff Jacklin and the Colorado Class Members damages for unpaid wages and all other damages allowed by law;

f.     For an Order certifying the IPWCA Class as defined in ¶ 153, and designating Plaintiff Spray as Representative of the IPWCA Class;

g.     For an Order pursuant to the Illinois state law awarding Plaintiff Spray and the IPWCA Class Members damages for unpaid wages and all other damages allowed by law;

h.      For an Order certifying the IMWL Class as defined in ¶ 133, and designating Plaintiff Spray as Representative of the IMWL Class;

i.      For an Order pursuant to the Illinois state law awarding Plaintiff Spray and the IMWL Class Members damages for unpaid wages and all other damages allowed by law;

j.      For an Order certifying the New Jersey Class as defined in ¶ 175, and designating Plaintiff Janson as Representative of the New Jersey Class;

k.      For an Order pursuant to the New Jersey state law awarding Plaintiff Janson and the New Jersey Class Members damages for unpaid wages and all other damages allowed by law;

l.      For an Order certifying the New York Class as defined in ¶ 198, and designating Plaintiff Janson as Representative of the New York Class;

m.      For an Order pursuant to the New York state law awarding Plaintiff Janson and the New York Class Members damages for unpaid wages and all other damages allowed by law;

n.      For an Order awarding the costs of this action;

o.      For an Order awarding attorneys' fees;

p.      For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

q.      For an Order awarding Plaintiffs Janson, Jacklin, and Spray service awards as permitted by law;

r.      For an Order compelling the accounting of the books and records of SAC, at SAC's expense (should discovery prove inadequate); and

s.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: April 3, 2024

Respectfully submitted,

*/s/ Douglas M. Werman*
**Douglas M. Werman**
dwerman@flsalaw.com
**Maureen A. Salas**
msalas@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
T: 312-419-1008
F: 312-419-1025

**Clif Alexander**
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin Anderson**
Texas Bar No. 24045189
austin@a2xlaw.com
**Carter T. Hastings**
Texas Bar No. 24101879
carter@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiffs and
Putative Collective/Class Members***